UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                          :
JULIO RAMIREZ,                             :
                          Plaintiff,         :
                                          :
                -against-                 :         17 Civ. 7801 (LGS)
                                          :
E.L. TATUM, JR., et al.,               :         **OPINION AND ORDER**
                                Defendants.  :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Pro se Plaintiff Julio Ramirez, a pretrial detainee at the Metropolitan Correctional Center ("MCC"), brings this action against ten federal employees. Liberally construed, Plaintiff's Amended Complaint (the "Complaint") alleges that Defendants violated his constitutional rights under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and the Federal Torts Claims Act ("FTCA") in relation to medical treatment Plaintiff received at the MCC. Defendants collectively move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), except as to the post-surgery actions of Defendants Robert Beaudoin and Mandeep Singh, and Defendant Ysmael Joaquin's actions after Plaintiff informed Joaquin of Plaintiff's medical needs in person.[1] Plaintiff opposes the motion. For the following reasons, Defendants' motion is granted in part and denied in part.

I. **BACKGROUND**

      The facts are taken from the Complaint, statements made at the June 19, 2018, conference and Plaintiff's opposition memorandum. *See Coke v. Med., Dep't of Corr. & Cmty.*

---

[1] Defendants' Reply Memorandum of Law states that "Beaudouin and Singh no longer move to dismiss Plaintiff's post-surgery claims for deliberate indifference to medical needs, and Joaquin no longer moves to dismiss Plaintiff's deliberate indifference to medical needs claims subsequent to Plaintiff's alleged in-person complaints to him."

*Supervision*, No. 17 Civ. 0866, 2018 WL 2041388, at *1 n. 2 (S.D.N.Y. Apr. 30, 2018) ("[W]hen a *pro se* plaintiff's opposition memoranda raises new allegations that are 'consistent with the allegations' in the Complaint, these allegations may be read as 'supplements to th[e] pleadings.'") (some alteration in original). As required on a motion to dismiss, these facts are accepted as true and construed in the light most favorable to Plaintiff. *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017).

### A. Pre-Surgery

Since May 2, 2017, Plaintiff Julio Ramirez has been a pre-trial detainee at the MCC. After arriving at the MCC, Plaintiff began feeling severe sharp pains around his groin. A couple of days later, Plaintiff told his housing unit officer that his extreme pain necessitated medical attention. Even though Plaintiff's housing unit officer told the medical department that Plaintiff's pain was a 15 out of 10, Plaintiff was nevertheless directed to submit a message to sick call in order to receive treatment.

For about a month, Plaintiff received no medical treatment even though he filed several messages with sick call and sought help from Defendant Joaquin, a physician's assistant who dispensed medication to detainees. For example, on July 3, 2017, Plaintiff sent a message to sick call, saying that he had requested medical attention several times. On July 30, 2017, Plaintiff sent a message to sick call asking for medical attention for pain in his groin that had persisted for a month. The MCC staff responded on August 1, 2017, saying that Plaintiff would be placed on the sick call list. In addition, an officer in Plaintiff's housing unit tried to help Plaintiff obtain medical treatment, but to no avail. During this time, Plaintiff could not walk upright or use the restroom without extreme discomfort.

The day after Defendant Singh, a registered nurse, placed Plaintiff on the sick call list, Singh saw Plaintiff at sick call. After Plaintiff complained of groin discomfort, Singh examined Plaintiff and concluded that he had hemorrhoids. After browsing the internet, Singh prescribed two pain medications.

After Plaintiff spoke with Defendant Warden Tatum in May 2017 and told Tatum he was in severe pain, Tatum told Plaintiff to write to sick call. On July 22, 2017, Plaintiff sent a message addressed to Tatum, asking for medical assistance. Although Plaintiff continued to inform medical staff that he was in pain and his criminal lawyer contacted MCC personnel in July 2017, Plaintiff did not receive medical treatment.

### B. Post-Surgery

In August 2017, Plaintiff fell in his cell. An officer called the MCC medical staff and Plaintiff was sent to an outside hospital for an unidentified emergency surgery. After surgery, Plaintiff was pushed in a wheelchair to a four-door sedan for transport back to the MCC. Plaintiff told Defendant Correctional Officers Deonn Richardson and Andres Naranjo that he was unable to get into the car; Plaintiff expressed concern about being placed in a car 24 hours after groin surgery, and said that his mobility was compromised. The officers replied that there was nothing they could do, and did not respond to Plaintiff's request that they request another vehicle, such as an ambulance.

After Naranjo told Plaintiff to get into the car, the officers eventually made Plaintiff bend to get into the vehicle. Plaintiff advised Richardson and Naranjo that he had severe swelling in his lower abdomen and bending his body caused extreme pain. Plaintiff cried as he told the officers that the pain was indescribable and felt as if his surgery wound would reopen. The officers seemed to be upset that Plaintiff was in tears. Naranjo entered the opposite back

passenger door and both officers told Plaintiff to reach his hands into the car. Doing so caused Plaintiff overwhelming pain. Richardson grabbed Plaintiff's hands and pulled him into the vehicle as Plaintiff screamed from pain. As the officers drove to MCC, Plaintiff laid on his stomach in the backseat in pain. When Plaintiff asked the officers why they pulled Plaintiff into the car, Naranjo said that he "[did not] have time for this bullshit."

At the MCC, Richardson and Naranjo pulled Plaintiff out of the car as Plaintiff yelled. Defendant Correctional Officer Rosalind Silvia then took Plaintiff via wheelchair to the medical department to see Joaquin. Plaintiff told Joaquin that Plaintiff had been forced into the vehicle transporting him from the hospital to the MCC, which may have reinjured Plaintiff. Joaquin did not look at Plaintiff's sutures, saying that the surgery had been completed perfectly and that Plaintiff did not need any antibiotics or pain medication. Joaquin told Silvia to take Plaintiff to his housing unit. Plaintiff told Joaquin and Silvia that he was in a lot of pain. Joaquin took away the medication Plaintiff had from the hospital, gave Plaintiff two Tylenol and again directed Silvia to return Plaintiff to his housing unit.

Silvia took Plaintiff to his housing unit. Plaintiff's cell is on the second floor. Sylvia stopped the wheelchair in front of a staircase and told Plaintiff to go up the stairs. Plaintiff responded that his extreme post-surgical pain prevented him from standing and walking up the stairs. Silvia told Plaintiff that she would put him in "the box," which is a special housing unit where Plaintiff would be held in solitary confinement. After some onlooking detainees protested, Sylvia responded that if the other detainees did not help Plaintiff, Plaintiff would be put in the box. When detainees attempted to pick Plaintiff up in the wheelchair, Silvia told them to pick Plaintiff up without it. Holding Plaintiff's arms and legs, two detainees carried Plaintiff up the stairs, causing Plaintiff's surgery site to bleed and partly reopen.

Four days later, Plaintiff was given two Tylenol for his discomfort. Plaintiff protested, saying that Tylenol would be insufficient for his pain. Later that morning, Plaintiff went to a drug treatment program. As Plaintiff walked down the stairs, he felt a sharp pain in his groin and fell down several stairs. An officer ran to help Plaintiff, telling Plaintiff not to move while he called for a lieutenant and the medical department. Several minutes later Plaintiff was put in a wheelchair by Defendant Correctional Officer Marquea Rice. Plaintiff told Rice that there was water on the stairs and that Plaintiff had felt a sharp pain before falling. Rice told Plaintiff to "stop fucking lying" about water on the stairs, and stated that he would watch the video of the incident and if Plaintiff was lying, Rice would come to take Plaintiff to the box. Rice took Plaintiff to the medical department and did not come back.

At the medical department, Plaintiff explained to Joaquin that there was water on the stairs and that Plaintiff had felt a sharp pain before falling. Joaquin checked Plaintiff's legs and directed Plaintiff to see the doctor. The doctor asked Plaintiff questions, told Plaintiff that he would send some pain medication, and referred Plaintiff to Plaintiff's appointed doctor, Defendant Beaudouin.

Plaintiff sent two messages to sick call -- on August 21 and August 22, 2017 -- requesting to see a doctor after his operation.

About three weeks after Plaintiff fell down the stairs, Plaintiff still had not seen Beaudouin for a medical appointment. Plaintiff saw Beaudouin in passing several times; each time Plaintiff asked to be seen immediately for his pain and to have his dressing examined. Beaudouin responded that he knew of Plaintiff's ailments, that there were other patients Beaudouin needed to attend to, that Plaintiff was on his list and that Beaudouin would see

5

Plaintiff when he could. When Plaintiff attempted to respond, Beaudouin held up his hands, said that he was busy and walked off.

After an officer asked medical staff to see Plaintiff, Plaintiff saw Singh. Once Plaintiff showed Singh his dressing, Singh told Plaintiff to clean the dirty, puss-oozing wound himself due to the odor emanating from the wound.

Plaintiff filed this lawsuit on October 11, 2017. On October 25, 2017, Plaintiff sent a message addressed to Dr. Beaudoin, saying that his surgeon told him to get a follow-up on his swollen, painful right groin. On October 30, 2017, MCC staff responded that Plaintiff had been given a follow-up with his surgeon.

On November 15, 2017, Plaintiff sent a message to sick call, saying that he was in discomfort after his surgery and that he had not seen a doctor for a follow-up. On November 20, 2017, the chief of the medical department said to Plaintiff that Plaintiff had an issue with the medical staff. On November 22, 2017, Plaintiff saw the doctor who performed Plaintiff's surgery, and that doctor immediately stated that he knew of Plaintiff's lawsuit.

### C. Administrative Remedy Forms

Defendants Erskine Walkes and Flor Olivares, both Bureau of Prison Counselors, told Plaintiff that filling out certain Bureau of Prison ("BOP") forms (i.e. BP forms) would help Plaintiff obtain medical treatment.[2] Plaintiff tried numerous times to acquire a BP-8 form from

---

[2] The BOP Administrative Remedy Program, 28 C.F.R. § 542.10 *et seq.*, lays out the administrative exhaustion requirements for BOP inmates. First, an inmate is first to present an issue informally to a staff member through a BP-8 form to try and resolve the issue. *See* 28 C.F.R. § 542.13(a). Second, if the issue is not resolved informally, then the inmate is to file a formal written Request for Administrative Remedy using a BP-9 form within 20 days of the occurrence which gave rise to the complaint. *See* 28 C.F.R. § 542.13(b). Third, if the BP-9 is denied, the inmate may appeal to the requisite BOP Regional Director using a BP-10 form. *See* 28 C.F.R. § 542.15(a). Fourth, if the BOP Regional Director renders a negative decision, the inmate appeals to the General Counsel. *See id.*

Walkes. The first time Plaintiff requested a form, Walkes told Plaintiff that he would not receive a form until he explained why it was needed. The next time, Walkes said he was too busy to provide the form. For the next one to two weeks, Plaintiff asked Walkes for a form three to four times a week. Once Walkes gave Plaintiff a BP-8 form, Plaintiff filled it out and gave it back to Walkes the next day. Walkes stated that he would "take care of this" and laughed. About three weeks later, Plaintiff asked Walkes what happened to the BP-8. Walkes laughed and said that he would take care of Plaintiff. Plaintiff informed Walkes that he had not received an answer on his BP-8, and Walkes stated that he would check on it. When Plaintiff later asked after his BP-8, Walkes stated that he gave it to a counselor, who gave it to the medical department. A week later, Plaintiff asked Walkes about his BP-8. Walkes said not to worry about the BP-8 and told Plaintiff to fill out a BP-9. At some point, Unit Manager Vitale told Plaintiff that he did not receive Plaintiff's BP-8.

When Plaintiff tried to hand his BP-9 to Olivares, Olivares tried to avoid taking it and walked away. Olivares then noticed Deputy Warden Skipper-Scott watching and took the BP-9 from Plaintiff saying, "I'm going to make sure it gets in just like the BP-8 or BP-9 did okay?" Afterwards, Plaintiff asked Olivares about his BP forms but Olivares would say she was busy, yell at Plaintiff, walk away, or tell Plaintiff to stop asking about the forms.

On October 1, 2017, Plaintiff filed a request for administrative remedy with the U.S. Department of Justice Federal Bureau of Prisons, saying that he had never heard back on his BP-8.

Plaintiff alleges that since he filed his administrative grievances, the MCC medical staff has taken adverse action against him by not providing medical treatment.

## II. LEGAL PRINCIPLES

### A. Motion to Dismiss

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Montero v. City of Yonkers, New York*, 890 F.3d 386, 391 (2d Cir. 2018), but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotation marks omitted). "The policy of liberally construing pro se submissions is driven by the understanding that implicit in the right to self-representation is an obligation . . . of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* at 156–57 (internal quotation marks omitted). "We afford a pro se litigant 'special solicitude' by interpreting a complaint filed pro se to raise the strongest claims that it suggests." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (internal quotation marks omitted).

### B. *Bivens*

In *Bivens*, the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v.*

*Malesko*, 534 U.S. 61, 66 (2001). For individual liability to attach, *Bivens* defendants must be personally involved such that "through their own actions, they satisfy each element of the underlying constitutional tort." *Ashcroft v. Turkmen*, 789 F.3d 218, 250 (2d Cir. 2015), *rev'd on other grounds*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1869 (2017).

A two-step process determines whether a *Bivens* remedy is available for an alleged constitutional injury. First, a court must determine if there is a recognized *Bivens* action encompassing that claim. *Ochoa v. Bratton*, No. 16 Civ. 2852, 2017 WL 5900552, at *6 (S.D.N.Y. Nov. 28, 2017) (quoting *Ziglar*, 137 S. Ct. at 1857) ("Because 'the [Supreme] Court has made clear that expanding the *Bivens* remedy is now a "disfavored" judicial activity,' when confronted with claim under *Bivens*, a district court must first determine whether a *Bivens* action encompassing that claim has already been recognized, or whether the claim presents a potentially new context."). "The Supreme Court has recognized a *Bivens* action in only three contexts: (1) an unreasonable search and seizure in violation of the Fourth Amendment, (2) employment discrimination in violation of the Due Process Clause of the Fifth Amendment, and (3) failure to treat an inmate's medical condition in violation of the Eighth Amendment." *Modest Needs Found. v. Bianco*, No. 16 Civ. 3144, 2017 WL 3130416, at *9 (S.D.N.Y. July 21, 2017) (internal citations omitted). "The proper test for determining whether a case presents a new *Bivens* context is as follows. If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Ziglar*, 137 S. Ct. at 1859. The Supreme Court has provided some examples of ways in which a case "might differ in a meaningful way" including:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by

the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1859–60. Although "the new-context inquiry is easily satisfied," the Supreme Court has recognized that "[s]ome differences, of course, will be so trivial that they will not suffice to create a new *Bivens* context." *Id.* at 1865.

Second, if the claim arises in a new context, a court must consider whether there are special factors counseling hesitation in creating a *Bivens* remedy. *Id.* at 1857. The question of what special factors counsel hesitation "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action or proceed." *Id.* at 1857–58. "Thus, to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." *Id.* at 1858. "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 1858.

## III. DISCUSSION

### A. Retaliation and Excessive Force

The Complaint is construed to include a retaliation claim because Plaintiff alleges that Olivares was hostile toward him and medical staff did not provide him medical treatment after he submitted his administrative remedy forms. The Complaint is also construed to include an excessive force claim against Defendants Richardson and Naranjo for forcing Plaintiff into the vehicle to transport him from the hospital to MCC. These claims are dismissed. First, both claims present a new *Bivens* context. The Supreme Court has recognized only three *Bivens* contexts, none of which include retaliation or excessive force. Second, there are special factors that counsel against expanding a new *Bivens* remedy, including the availability of alternative

relief (the FTCA, discussed below), and Congress's legislation in the area of prisoners' rights. *See Ziglar*, 137 S. Ct. at 1865 (noting that post-*Carlson*, "Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court [without providing for a standalone damages remedy against federal jailers]," therefore "Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs") (internal citation omitted). As a result, there is no *Bivens* remedy for retaliation or excessive force claims. *See Turkmen v. Ashcroft*, No. 02 Civ. 2307, 2018 WL 4026734, at *13 (E.D.N.Y. Aug. 13, 2018) (collecting cases); *Free v. Peikar*, No. 17 Civ. 00159, 2018 WL 1569030, at *6 (E.D. Cal. Mar. 30, 2018) (declining to extend a *Bivens* remedy for retaliation); *Abdoulaye v. Cimaglia*, No. 15 Civ. 4921, 2018 WL 1890488, at *6 (S.D.N.Y. Mar. 30, 2018) (declining to extend a *Bivens* remedy for a pretrial detainee's excessive force claim under the Fifth Amendment).

Therefore, Plaintiff's retaliation and excessive force claims are dismissed.

## B. Deliberate Indifference to Serious Medical Needs

Defendants move to dismiss Plaintiff's deliberate indifference to a serious medical need claim based on the Complaint's failure to plead various elements.[3]

---

[3] Defendants do not question whether a Fifth Amendment *Bivens* remedy for deliberate indifference to a serious medical need exists after *Ziglar*; for the purposes of this motion, its existence is assumed. *See Morgan v. Shivers*, No. 14 Civ., 2018 WL 618451, at *7 n.4 (S.D.N.Y. Jan. 29, 2018) ("The Court notes that, even in light of the proscription against creating new *Bivens* remedies, it would be counterintuitive if a convicted prisoner could remedy a federal officer's failure to provide medical care amounting to punishment, but a pre-trial detainee—who, 'unlike convicted prisoners[,] cannot be punished at all,' could not. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2475 (2015).") (alteration in original).

### 1. Standard

The Fifth Amendment protects federal pretrial detainees from deliberate indifference to their serious medical needs. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Darnell v. Pineiro*, 849 F.3d 17, 21 n.3, 29 (2d Cir. 2017).[4] To assert a viable constitutional claim for inadequate medical care, a plaintiff must plead facts showing that (1) the deprivation of medical care is objectively "sufficiently serious" in light of a medical condition "that may produce death, degeneration, or extreme pain," *Hill*, 657 F.3d at 122, and (2) "the defendant-official . . . intentionally . . . or recklessly failed to act with reasonable care . . . even though the defendant-official knew, or should have known," that the alleged medical condition "posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35; *see also Hill*, 657 F.3d at 122–23.

A plaintiff must plead "that the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious' -- that is, . . . that his medical need was a condition of urgency, one that may produce death, degeneration, or extreme pain." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (internal quotation marks omitted). "Because '[t]he objective component . . . is . . . [necessarily] contextual' and fact-specific, the serious medical need inquiry must be tailored to the specific circumstances of each case." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (alterations in original) (internal citation omitted) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). "Put simply, 'it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes.'" *Whitley*

---

[4] Case law from actions brought under 42 U.S.C. § 1983 may appropriately be applied to *Bivens* actions. *See, e.g.*, *Gonzalez v. Hasty*, 802 F.3d 212, 221 (2d Cir. 2015).

*v. Bowden*, No. 17 Civ. 3564, 2018 WL 2170313, at *7 (S.D.N.Y. May 10, 2018) (quoting *Smith*, 316 F.3d at 186).

Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs." *Estelle*, 429 U.S. at 104–06. Non-medical personal may be deliberately indifferent by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.*; *Johnson*, 412 F.3d at 404 (citing *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987)) ("[A] deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians."). Still, "a plaintiff must prove that [nonmedical] prison personnel intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problems known to the attendant prison personnel or that the inmate suffered a complete denial of medical treatment." *Roundtree v. City of New York*, No. 15 Civ. 8198, 2018 WL 1586473, at *6 (S.D.N.Y. Mar. 28, 2018) (alteration in original) (internal quotation marks omitted).

### a. Defendants Walkes and Olivares

The Complaint fails to state a claim against BOP Counselors Walkes and Olivares for deliberate indifference to a serious medical need. The Complaint alleges that they purposefully prohibited Plaintiff from filing his administrative remedy forms. This allegation would show intentional denial or delaying of access to medical treatment, *see Estelle*, 429 U.S. at 104–06, if Walkes and Olivares were aware of Plaintiff's medical condition at the time. But conclusory allegations, without any factual support, that Walkes and Olivares knew or should have known of Plaintiff's severe medical condition are insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. The claims against Walkes and Olivares are dismissed.

### b. Defendant Rice

The Complaint fails to state a plausible claim for deliberate indifference to a serious medical need against Correctional Officer Rice. The Complaint alleges that Rice took Plaintiff to the medical department just several minutes after Rice arrived with a wheelchair. Even though the Complaint alleges that Rice threatened to put Plaintiff in the box if Plaintiff lied about water on the stairs, it also states that Rice never came back to put Plaintiff in the box. The Complaint does not allege that Rice caused any physical injury to Plaintiff or deprived Plaintiff of medical care. *See Santiago v. Pressley*, No. 10 Civ. 4797, 2011 WL 6748386, at *3 (S.D.N.Y. Dec. 23, 2011) (no deprivation of medical care where the plaintiff was transported to the prison infirmary). The claims against Rice are dismissed.

### c. Defendants Richardson, Naranjo and Silvia

Plaintiff claims for inadequate medical care against Correctional Officers Richardson, Naranjo and Silvia survive Defendants' motion to dismiss.

First, at the motion to dismiss stage, Plaintiff has alleged a plausible objectively serious deprivation of medical care (not calling for an ambulance or allowing the use of a wheelchair to go upstairs) which may (and allegedly did) cause Plaintiff extreme pain and injury. Specifically, as to Richardson and Naranjo, Plaintiff alleges that he was in extreme pain and had limited mobility when he was discharged from the hospital 24 hours after his groin surgery, and that his condition was exacerbated by Richardson and Naranjo physically pulling him into a sedan rather than calling for an ambulance. As to Silvia, Plaintiff alleges that despite Plaintiff's protests of pain, Silvia forced other detainees to move him up the stairs without a wheelchair, which caused his surgical wound to reopen. These allegations are sufficient to satisfy the objective prong at the motion to dismiss stage, where the actions of Richardson, Naranjo and Silvia risked extreme

14

pain to Plaintiff and complications to the surgical wound. *See, e.g.*, *Bruno v. City of Schenectady*, 727 F. App'x 717, 721 (2d Cir. 2018) (summary order) (finding that plaintiff "sufficiently alleged . . . a 'serious medical condition'" where she claimed that police officers aggravated her pre-existing traumatic brain injury by forcibly arresting her, which "placed her once again in a 'condition of urgency'"); *Sereika v. Patel*, 411 F. Supp. 2d 397, 406 (S.D.N.Y. 2006) (denying defendants' summary judgment on a *Bivens* inadequate medical care claim because plaintiff allegations of severe pain and reduced mobility due to delay in treatment "raise issues of fact as to whether his . . . injury constitutes a sufficiently serious medical condition to satisfy the objective prong of the deliberative indifference standard").

Second, Plaintiff plausibly alleges that Richardson, Naranjo and Silvia were deliberately indifferent because they knew, or should have known, that forcing Plaintiff into a sedan and requiring detainees to carry Plaintiff up the stairs without his wheelchair in his post-operative condition were excessive risks to Plaintiff's heath, and they failed to act with reasonable care. In particular, Plaintiff asserts that he told both Richardson and Naranjo that he had undergone groin surgery 24 hours earlier, repeatedly cried out in pain when they tried to move Plaintiff into the car, asked for an ambulance, and communicated "that it felt like [his surgery] wound would burst open." Plaintiff also contends that he told Silvia he could not walk up the stairs because of his surgery and that he was in extreme pain; yet Silvia forced two prisoners to carry Plaintiff up a flight of stairs without a wheelchair, causing Plaintiff's surgery incision to partly reopen. Drawing all reasonable inferences in favor of Plaintiff, these allegations are sufficient to show that Richardson, Naranjo and Silvia were deliberately indifferent to Plaintiff's serious post-operative condition. *See Whitley*, 2018 WL 2170313, at \*10 (sufficient allegation of a defendant prison guard's deliberate indifference where the plaintiff alleged that the guard knew the plaintiff

15

had already overdosed on pills, swallowed 30 more pills in front of the guard, and the guard walked away); *see also Thomas v. Ashcroft*, 470 F.3d 491, 497 (2d Cir. 2006) (sufficient allegations of personal involvement to maintain a *Bivens* action where the plaintiff "allege[d] that [the defendants] . . . knew of [the plaintiff's] urgent medical needs but ignored them, and nevertheless ordered or acquiesced in his transfer to a[nother] facility where he received no medication").

For these reasons, the Complaint alleges a plausible claim of deliberate indifference to a serious medical need against Richardson, Naranjo and Silvia, and this claim survives Defendants' motion to dismiss.

### d. Defendant Tatum

The Complaint does not plausibly allege a claim for deliberate indifference to a serious medical need against Warden Tatum. The Complaint does not allege that, as non-medical personnel, Tatum intentionally denied or delayed access to medical treatment, or that Tatum intentionally interfered with prescribed treatment. *Estelle*, 429 U.S. at 104–05. The Complaint alleges that after he spoke with Tatum, Tatum told Plaintiff to write to sick call. As a non-medical professional, Tatum is entitled to delegate medical complaints to medical staff. *See Hernandez v. Keane*, 341 F.3d 137, 148 (2d Cir.2003) (delegating responsibility to investigate an inmate's medical complaint to other prison staff was not deliberately indifferent when the defendant in question was a non-medical official). The Complaint also alleges that on July 22, 2017, Plaintiff sent a message addressed to Tatum, asking for medical assistance. Construing the facts in the light most favorable to Plaintiff, Tatum received Plaintiff's July 22, 2017, message and ignored it. However, an allegation that Tatum received but ignored Plaintiff's letter is not sufficient to establish personal liability. *See e,g.*, *Jones v. Annucci*, No. 16 Civ. 3516, 2018 WL

16

910594, at *11 (S.D.N.Y. Feb. 14, 2018) (insufficient to allege that the Acting Commissioner of the New York State Department of Corrections and Community Supervision received but failed to respond to the plaintiff's letter); *Mabry v. Fischer*, No. 11 Civ. 2887, 2011 WL 6034368, at *3 (S.D.N.Y. Dec. 5, 2011) (insufficient to allege that the New York Commissioner of the Department of Correctional Facilities referred letters of complaint to other officials or did not respond at all). As a result, the claim against Tatum is dismissed.

### e. Defendant Singh For Pre-Surgery Actions

The Complaint does not sufficiently state a claim against nurse Singh for pre-surgery actions. The Complaint alleges that Singh should have diagnosed Plaintiff with a hernia when he first examined Plaintiff. A misdiagnosis by a medical professional, without more, is not a basis for a claim for deliberate indifference. *See e.g.*, *Figueroa v. Cty. of Rockland*, No. 16 Civ. 6519, 2018 WL 3315735, at *6 (S.D.N.Y. July 5, 2018) ("Medical malpractice, misdiagnosis and the decision not to treat based on an erroneous view that the condition is benign or trivial does not rise to the level of deliberate indifference.") (internal quotation marks omitted); *Idowu v. Middleton*, No. 12 Civ. 01238, 2013 WL 4780042, at *9 (S.D.N.Y. Aug. 5, 2013) ("Plaintiff's disagreement with [the doctor]'s diagnostic technique and medical judgment cannot provide the basis for a deliberate indifference claim . . . ."). Plaintiff's pre-surgery claim against Singh is dismissed.

### f. Defendants Beaudoin and Joaquin

Defendants' motion to dismiss is limited to Dr. Beaudoin's pre-surgery actions and physician assistant Joaquin's actions after Plaintiff informed Joaquin of Plaintiff's medical needs in person. As the Complaint has not alleged any such actions, the motion to dismiss in part as to these two Defendants is granted.

17

### C. Injunctive Relief

Injunctive relief is not available in a *Bivens* action. *Kurzberg v. Ashcroft*, 619 F.3d 176, 179 n.2 (2d Cir. 2010). To the extent that Plaintiff seeks injunctive relief -- in particular an order appointing an independent agency to handle administrative remedies or ordering the Bureau of Prisons to follow proper health care standards -- these requests are dismissed.

### D. FTCA

The Complaint is construed to include an FTCA claim, but that claim is dismissed without prejudice. First, Plaintiff does not sue the United States -- which is the only proper defendant in an FTCA action. *See Spinale v. U.S. Dep't of Agric.*, 621 F. Supp. 2d 112, 117 (S.D.N.Y. 2009), *aff'd* 356 Fed. App'x. 465 (2d Cir. 2009) (summary order) (dismissing claim against federal agency because the only proper defendant in an FTCA action is the United States). Second, the Complaint does not contain sufficient allegations showing that Plaintiff exhausted his administrative remedies. Under the FTCA, a plaintiff must exhaust administrative remedies prior to bringing a tort claim against the United States. The FTCA states in relevant part:

> (a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first *presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing* . . . .

28 U.S.C. § 2675(a) (emphasis added). Although the Complaint includes a request filed with the U.S. Department of Justice Federal Bureau of Prisons, there is no indication that there was a final determination by the agency. For these reasons, the FTCA claim is dismissed.

If Plaintiff believes that he can sufficiently replead his FTCA claim or deliberate indifference to a serious medical need claim against Defendants Walkes, Olivares, Rice or

Tatum, he may file a letter application (by sending it to the Pro Se Intake Office), not to exceed three single-spaced pages, describing how he would amend the Complaint to cure the deficiencies described in this Opinion -- including (1) for an FTCA claim, how Plaintiff has exhausted all necessary administrative remedies prior to bringing such a tort claim against the United States; (2) for a deliberate indifference to a serious medical need claim against Walkes and Olivares, how (specifically) Walkes and Olivares knew or should have known of Plaintiff's severe medical condition; (3) for a deliberate indifference to a serious medical need claim against Rice, how Rice caused any physical injury to Plaintiff or deprived Plaintiff of medical care, and knew or should have known of Plaintiff's severe medical condition; and (4) for a deliberate indifference to a serious medical need claim against Tatum, how Tatum was personally involved in Plaintiff's medical treatment. Any such application for leave to replead shall be filed as provided below.

## IV. CONCLUSION

For the following reasons, Defendants' partial motion to dismiss is GRANTED, except it is DENIED as to Defendants Richardson, Naranjo and Silvia for post-surgery actions. For clarity, the only remaining claims are *Bivens* claims for deliberate indifference to a serious medical need against (1) Defendants Richardson, Naranjo and Silvia for post-surgery actions, (2) Defendants Beaudouin and Singh for post-surgery actions and (3) Defendant Joaquin for actions after Plaintiff informed Joaquin of Plaintiff's medical needs in person -- the last two categories of which were not the subject of this motion.

If Plaintiff seeks leave to file an amended complaint, he shall file a letter application as described above no later than February 2, 2019. Even if Plaintiff does not seek to file an amended complaint, this case will proceed on Plaintiff's *Bivens* claims for deliberate indifference

19

to a serious medical need against (1) Defendants Richardson, Naranjo and Silvia for post-surgery actions, (2) Defendants Beaudouin and Singh for post-surgery actions and (3) Defendant Joaquin for actions after Plaintiff informed Joaquin of Plaintiff's medical needs in person.

The Clerk of Court is respectfully directed to close the motion at Docket Number 75 and to mail a copy of this Opinion and Order to pro se Plaintiff.

Dated: December 19, 2018
       New York, New York

                                              **LORNA G. SCHOFIELD**
                                           **UNITED STATES DISTRICT JUDGE**